**United States District Court**
For the Northern District of California

1

2

3                                        UNITED STATES DISTRICT COURT

4                                        NORTHERN DISTRICT OF CALIFORNIA

5

6

7    NATHANIEL HOLMES,

8                    Plaintiff,                        No. C 09-5781 PJH

9          v.                                          **ORDER RE DEFENDANTS' MOTIONS**
                                                       **FOR SUMMARY JUDGMENT**
10   TENDERLOIN HOUSING CLINIC, INC.,
     et al.,
11
                     Defendants.
12   _____/

13          The motion of defendants Tenderloin Housing Clinic, Inc. ("THC"), Randall Shaw,

14   and Kristal Gaeta (collectively, the "THC defendants") for summary judgment, and the

15   motion of defendant Service Employees International Union, Local 1021 ("SEIU," or "the

16   Union") for summary judgment, came on for hearing before this court on February 2, 2011.

17   Plaintiff Nathaniel Holmes appeared by his counsel Curtis G. Oler, the THC defendants

18   appeared by their counsel Mark A. White, and the Union appeared by its counsel Vincent

19   Harrington.  Having read the parties' papers and carefully considered their arguments and

20   the relevant legal authority, and good cause appearing, the court hereby GRANTS the THC

21   defendants' motion in part and DENIES it in part, and GRANTS the Union's motion.

22                                              **BACKGROUND**

23          Plaintiff Nathaniel Holmes ("Holmes") is African-American.  He was employed by

24   THC from May 1999 through November 6, 2008, when he was terminated.  THC is a non-

25   profit provider of low-income housing and housing services, including legal services, and is

26   located in the Tenderloin area of San Francisco.  THC operates 15 single room occupancy

27   (SRO) hotels, as well as one apartment building, and employs a staff of over 200 full-time

28   workers, who operate and manage THC's offices, hotels, and other business locations.

United States District Court

For the Northern District of California

1      Since 2006, THC's employees have been represented by Local 1021 under a series

2    of collective bargaining agreements ("CBAs"), including an agreement effective July 1,

3    2007, through June 30, 2009, covering the period of events leading to Holmes' termination

4    and this litigation.

5      That CBA contained numerous terms and conditions of employment, including a

6    grievance procedure and a procedure for processing such grievances, which might include

7    final and binding arbitration.  Holmes testified in his deposition that he was familiar with the

8    terms of the CBA, that he maintained a copy of it, and that he was on the bargaining team

9    that negotiated it.

10      For a number of years, Holmes worked in the position of Program Receptionist, at

11    two THC locations – 126 Hyde Street, and 472 Turk Street.  Holmes was a shop steward in

12    THC's Housing Department in 2007, and for a period in 2008.  Under Article 8 of the CBA,

13    Union stewards were authorized, and the Union was the party with the responsibility to

14    notify the employer (THC) of the identity of those shop stewards.

15      Holmes asserts in his declaration that during his entire tenure at THC, he performed

16    all his duties in an excellent manner.  However, the THC defendants contend that while

17    Holmes initially performed in a satisfactory manner, his personnel file reflects that he began

18    to experience problems in 2006 in his interactions with workplace supervisors and co-

19    workers.  Copies of supporting documents from Holmes' personnel file are attached as

20    exhibits to the declaration of Anthony Uribe, THC's current Director of Human Resources

21    ("HR"), and to the declaration of defendant Kristal Gaeta ("Gaeta").

22      In October 2006, Holmes received a verbal warning from his supervisor, Housing

23    Services Director Heather Allen, for "poor performance," "insubordination," and "not

24    cooperating with other employees."  This warning resulted from reports from both co-

25    employees and tenant clients that Holmes frequently "yelled" at them and was creating an

26    "unpleasant environment" in the workplace.  Holmes also accused Ms. Allen of being

27    "incompetent" and "after his job."

28      In August 2007, Ms. Allen resigned.  On August 30, 2007, HR Director Cathy Clagett

1  created a job posting for the open position of Housing Services Director.  The deadline for

2  internal applications was September 5, 2007.  As of the close of business that day, Gaeta

3  was the only THC employee who had applied for the position.  At Holmes' request, Ms.

4  Clagett extended the deadline for applications from internal candidates to September 6,

5  2007.

6      On that date, THC Housing Services Department Counselor Ramses Teon-Nichols

7  requested a further extension of the application deadline.  Ms. Clagett declined the request,

8  but advised Mr. Teon-Nichols that THC would consider his application if it was submitted by

9  the close of business on September 6, 2007.  Ms. Clagett also advised Mr. Teon-Nichols

10  that the position required certain qualifications, including prior supervisory experience, and

11  that based on her review of his resume, she was concerned that he did not have the

12  necessary experience.  Mr. Teon-Nichols submitted his application on September 8, 2007.

13  Despite Mr. Teon-Nichols' apparent lack of qualifications, and his late submission of the

14  application, THC nonetheless interviewed him.

15      On September 13, 2007, THC hired Gaeta as Director of THC's Housing Services

16  Department, finding her to be the most qualified candidate.  In this position, Gaeta was

17  Holmes' supervisor.  On September 13, 2007, Gaeta's first day as Director of Housing

18  Services, Holmes stated, in the presence of other THC staff and THC clients, that Gaeta

19  had obtained her promotion to Housing Services Director through "nepotism," and

20  complained that other workers from within the Housing Services Department who were

21  people of color and better qualified than Gaeta should have been promoted instead.

22      On September 19, 2007, Gaeta issued Holmes a written warning based on two

23  allegations of violations of THC's Code of Professional Conduct/Staff Rules – for

24  unprofessional and disrespectful conduct in the presence of co-workers and clients (based

25  on the negative interaction between Holmes and Gaeta on September 13, 2007), and for

26  leaving his work station without prior approval (on September 14, 2007).

27      At that time, Holmes was Union shop steward for the 472 Turk Street office.  On

28  September 20, 2007, he filed a grievance on Mr. Teon-Nichols' behalf, regarding THC's

United States District Court

For the Northern District of California

hiring process for the position of Housing Services Director.  Plaintiff complained to defendant Randall Shaw ("Shaw" – THC Executive Director), to Melissa Blizzard (Support Services Director), and to Cathy Clagett (HR Director) regarding this alleged discriminatory action, but asserts that they ignored his complaint.  Plaintiff then initiated a grievance pursuant to the CBA.

According to the THC defendants, the grievance was invalid, as it sought to challenge promotion to a non-protected management position outside the scope of the Union contract.  In addition, as shown by the declaration of Ms. Clagett, the position had been posted for application throughout the Housing Services Department for days, including at 472 Turk Street, and Mr. Teon-Nichols had not applied within the posted deadline – although his late application had nonetheless been considered by the HR Department.

Nevertheless, Holmes refused to accept the rejection of this grievance, and he began circulating among co-workers at 472 Turk Street during working hours seeking to generate support for his complaints against Gaeta and THC.  Gaeta states in her declaration that she began to receive reports from Housing Services staff that they were being disrupted in their work by Holmes and that they were intimidated by him and feared he would retaliate if they stood up to him.

On October 31, 2007, based on these reports, Gaeta informed Ms. Clagett that Holmes was creating a hostile work environment.  The HR Department initiated an informal investigation and began receiving reports and complaints from Holmes' co-workers directly. Those reports, as documented in Ms. Clagett's declaration, corroborated Gaeta's complaint, as Housing Services staff related that they felt frustrated and intimidated by Holmes' behavior.

On November 30, 2007, Holmes, Mr. Teon-Nichols, and THC mediated the hiring process grievance.  The mediator agreed with THC's position regarding the issue.

On December 5, 2007, THC issued Holmes another written warning, asserting that on two occasions, he had accepted a money order at the front desk, from a tenant for

United States District Court

For the Northern District of California

1   payment of rent, which was a violation of THC's "Check Security Policy." THC had adopted

2   this policy and communicated it to staff in October 2007. Attached to the written warning

3   was a copy of the Check Security Policy, and two reports dated November 2007 and

4   December 2007, claiming that Holmes had violated the Policy. Holmes acknowledged that

5   the Check Security Policy had been implemented in October 2007, but asserted that it was

6   done "illegally" and not according to Union "protocol." In a written response, dated

7   December 11, 2007, Holmes denied the December 2007 violation (but did not mention the

8   November 2007 violation) and argued extenuating circumstances.

9       In early December 2007, Holmes began complaining that Gaeta had been

10  implementing "unilateral changes in working conditions." Specifically, he sought to initiate a

11  grievance over the Check Security Policy. This grievance was rejected by THC on the

12  ground that operational controls such as an employer's check security procedures do not

13  constitute "working conditions" subject to collective bargaining. Union representative Daz

14  Lamparas advised Holmes that, based on THC's explanation, the Check Security Policy

15  was a valid work procedure that did not adversely affect the terms and conditions of anyone

16  in the unit, and did not constitute a violation of the CBA. The Union declined to proceed

17  with the grievance on that basis.

18      On December 18, 2007, THC placed Holmes on "indefinite paid administrative

19  leave" while it investigated claims that he had been creating a hostile work environment for

20  Gaeta and other employees. THC's HR Department then conducted interviews of Holmes'

21  co-workers and his supervisor Gaeta. As documented in the declarations of Jaime

22  Quijando and Ms. Clagett, those interviews provided further substantiation for Gaeta's

23  complaint of hostile work environment against Holmes, with co-workers reporting that he

24  was disrespectful to supervisors and disruptive and abusive towards other staff, particularly

25  in pressing his complaints of mistreatment by Gaeta.

26      In late December 2007, while the HR Department's investigation was still ongoing,

27  Holmes distributed a flyer to co-workers and tenants at 472 Turk Street, complaining about

28  having been placed on administrative leave and claiming that Gaeta had been mistreating

United States District Court
For the Northern District of California

workers at the Housing Services Department.  Entitled "Urgent Message From Our Union" and bearing the Local 1021 logo, the flyer stated that "[t]he leadership of our Union Chapter at THC has come under attack, and urged, "Stop the anti-Union hostility!  Return Nate Holmes to his workplace!"[1]

In a listing of "Facts," the flyer stated that "the Union" had "grieved the illegitimate and racist hiring process (affecting two Union applicants) conducted by THC's top management to hire Krista [sic] Gaeta under what we believe was favoritism."  The "Facts" also included statements that Holmes had filed grievances to "challenge" alleged unlawful policies, that Holmes had filed grievances against Gaeta, and that Gaeta's hiring reflected "favoritism and discriminatory hiring practices."  The flyer asserted that Holmes "has endured consistent harassment from bogus write-ups by the new Director," including the prior written disciplinary warnings.

Holmes was returned to work pursuant to a January 9, 2008, memorandum in which THC advised him that he was being "disciplined for retaliating against a worker who filed a hostile work environment claim."  The memorandum stated that Holmes' conduct violated THC's written anti-harassment policy which provides that "[a]ny form of retaliation for reporting harassment or participating in the investigation of a harassment complaint is illegal and will not be tolerated," and that "[a]ny employee who retaliates against another for reporting harassment or participating in the investigation of a harassment complaint will be disciplined, up to and including termination."  Holmes was familiar with THC's anti-harassment policy, having reviewed and signed an acknowledgment and acceptance of the policy in August 2005.

---

[1]  Holmes testified in his deposition that he did not prepare the flyer and did not know who did, although he claimed it was "from SEIU 1021 chapter at Tenderloin Housing Clinic . . . from our union chapter."  Mr. Lamparas, who at the time was serving as Local 1021's Field Representative assigned to represent members in various non-profit agency bargaining units, including employees of THC, states in his declaration submitted in support of SEIU's motion for summary judgment, that this flyer "was not an official publication of Local 1021," that he did not see it before it was distributed, and that it was "not authorized by the Local Union."  THC asserts that its HR Department received information during its investigation that Holmes himself had written the flyer.

United States District Court

For the Northern District of California

1  The discipline was a 3-day suspension without pay.  Attached to the memorandum

2  was a copy of the above-described flyer.  Shaw states in his declaration that the flyer

3  violated THC's Code of Professional Conduct/Staff Rules, which states that "[c]oncerns of

4  complaints regarding co-workers or the work performance of co-workers shall not be

5  discussed openly or entered into the hotel log."

6  On January 29, 2008, Holmes was offered, and accepted, a transfer to a new work

7  location at THC's "SRO Collaborative," located at 259 Hyde Street.  Holmes signed his

8  acceptance of the offer, but also wrote on the letter, "Depending upon completion of the

9  investigation, if the charges do not merit, Nate Holmes will return to his original position as

10  program receptionist at 472 Turk Street."  Holmes then began working under a new

11  supervisor as a program receptionist at the 259 Hyde Street office.  He continued to

12  receive the same pay and benefits as in his previous position in the Housing Services

13  Department.

14  Holmes testified that he understood that this reassignment to the SRO Collaborative

15  had been worked out as a result of "discussions and negotiations" between THC and the

16  Union regarding his placement.  The Union representative who negotiated this arrangement

17  was an African-American female, Yvette Jordan Albert.

18  Holmes claims in his declaration that in February 2008, HR Director Cathy Clagett

19  informed him that the "findings" of the "investigation" had been forwarded to an SEIU

20  supervisor whom Holmes identifies in his declaration as Evette Albert-Jordan ("Albert-

21  Jordan").[2]  However, Holmes asserts, "Albert-Jordan" did not provide him with a copy of the

22  "findings," and when he requested one, she allegedly told him that he should get it from

23  THC.  He claims that he has yet to receive a copy of the "findings."

24  Holmes also asserts that at some point, he attended "a mediation on proceeding

25  concerning actions which had been taken against him," at which time, he asserts, Mr.

26  Lamparas failed to bring a copy of the "findings" or to inform plaintiff about the content of

27  _____

28  [2]  This appears to be the same person (Yvette Jordan Albert) who negotiated Holmes'
placement at the SRO Collaborative in January 2008.

United States District Court

For the Northern District of California

1   the "findings."

2       It is undisputed that the Union carried grievances on Holmes' behalf with respect to

3   the September 2007 written warning, the December 2007 written warning, and the January

4   2008 three-day suspension.  These grievances were the subject of a mediation before a

5   mediator from the Federal Mediation & Conciliation Service in April 2008.  On April 10,

6   2008, the parties entered into a written settlement agreement.

7       In his deposition, Holmes testified that he was present throughout the mediation

8   session, and that he signed the settlement agreement.  He also testified that the mediated

9   session restored to him the back pay he had lost as a result of the previous three-day

10  suspension, and that it expunged or removed from his file all negative information from

11  September 1, 2007, to April of 2008, as well as the three-day suspension notice.

12      Pursuant to the settlement agreement, Holmes retained his position at the 259 Hyde

13  Street office.  The settlement agreement further provided that Holmes would also continue

14  as shop steward for the Housing Services Department "until further notification from SEIU

15  1021."  The agreement constituted "full and final settlement of the above issues and shall

16  be binding upon the parties," and Holmes and the Union formally withdrew "any and all

17  grievances regarding these matters."

18      Holmes' workplace conduct at 259 Hyde Street generated continuing problems with

19  co-workers and superiors over the following months.  The THC defendants assert that

20  although Holmes remained as shop steward for 472 Turk Street (despite his transfer from

21  that location), workers there began requesting an election for a new shop steward.

22  Defendants claim that Holmes objected to this and in July 2008 came at odds with local

23  union management over the issue.

24      Mr. Lamparas states in his declaration in support of SEIU's motion for summary

25  judgment that the Housing Department employees voted for a new shop steward in the

26  summer of 2008, and recalls that Holmes was not nominated.  He also recalls that even

27  after the election, Holmes "continued to be active in seeking to represent employees in the

28  Housing Department, and his ongoing efforts to act as a steward for Department

United States District Court

For the Northern District of California

1   employees did become a matter of some controversy among the unit employees, a number

2   of whom contacted me regarding that."

3        Holmes asserts, however, that Housing Services Staff signed a "petition" in July

4   2008 selecting him as the Shop Steward until the month of January, when there would be

5   an election.  Plaintiff asserts that "thereafter," THC and SEIU refused to acknowledge his

6   selection as shop steward and refused to accept his grievance relative to that refusal, and

7   to Shaw's and Gaeta's "continuing obstruction" of his right to exercise his rights under the

8   LMRA.

9        On October 14, 2008, Holmes went to THC's office at 126 Hyde Street to present a

10  grievance he had prepared on behalf of co-worker Vaenisha Rodgers over the shop

11  steward controversy.  While there, Holmes encountered head shop steward and THC

12  Administrative Associate Kenneth Duigenan and Mr. Lamparas (the Union representative).

13  They discussed the shop steward issue, and Holmes, by his own account, became "very

14  upset."  While standing in the public area of the office that is open to both workers and

15  clients, Holmes yelled at both Mr. Duigenan and Mr. Lamparas, asserting several times that

16  they were "racist."

17       Mr. Duigenan reported the incident to HR Director Jaynie Lara in an e-mail, stating,

18  "I do not want a vicious rumor to spread because of this incident, I find it a very serious

19  defamation of my character.  It is untrue and this may have a serious negative

20  consequence on my ability to perform my job function."  The HR Department initiated an

21  investigation, so advised Holmes, and requested a meeting with him to discuss the

22  incident.  Holmes appeared for the meeting but refused to make any statement or answer

23  any questions, insisting on consulting an attorney first.

24       On October 21, 2008, the HR Department received an incident report from THC staff

25  at the Seneca SRO Hotel, complaining that Holmes had disrupted their work on duty with a

26  petition that he insisted they sign.  The workers felt pressured by Holmes, who told them

27  that the petition was supported by the union. The HR Department sent Mr. Duigenan to

28  investigate.  At the Seneca Hotel, Mr. Duigenan encountered Holmes circulating the

United States District Court

For the Northern District of California

petition for signatures, and obtained it from him.

The petition, dated October 20, 2008, was styled as an "open letter" from Local 1021 to SEIU Local 87, the San Francisco janitors' local union.[3]  According to the letter,  Local 87 was scheduled to host a speaking engagement for THC's Executive Director Shaw, who was launching a new book he had written on Cesar Chavez.  The petition accused Shaw of hypocrisy in lauding Cesar Chavez's union legacy in his book while at the same time engaging in anti-union practices at THC:

> Under the leadership of Mr. Shaw, the Tenderloin Housing Clinic has driven out two of our shop stewards from their work sites because they stood up for the workers' rights under our contract. One shop steward was "investigated" under false charges, and the conclusion of the investigation was never presented to him.  Another had their job position suddenly and unilaterally terminated, in order to move her to a faraway location.  These are just two examples.  Grievances are often not taken seriously by the THC management regarding violations of our contract.  Our members have experienced false charges, harassment, wrongful firings, all while Mr. Shaw is aware of the situation.

At his deposition, Holmes denied writing the petition or knowing who did, and claimed that he discovered it in his employee mail slot at 259 Hyde Street one morning. He did acknowledge, however, that he circulated the petition to collect signatures among co-workers.

On October 23, 2008, THC's HR Department received complaints from two of Holmes' former co-workers at 472 Turk Street, who reported that Holmes was pressuring them to sign the petition and that they were feeling intimidated by his conduct.

On October 27, 2008, THC placed Holmes on paid administrative leave pending an investigation of the recent incidents.  The HR Department conducted interviews with THC staff and Union representatives, and the THC defendants assert that their collective accounts corroborated the initial reports of Holmes' altercation with Mr. Duigenan and Mr. Lamparas, and his circulation of the petition and disruptive conduct in attempting to

---

[3]  Mr. Lamparas states in his declaration in support of SEIU's motion that this document was not an official publication of SEIU, that it was not endorsed by SEIU, and that to his knowledge, the chapter itself at THC never adopted or endorsed the distribution of this "open letter."

United States District Court
For the Northern District of California

1  pressure co-workers into signing it.

2      HR Director Jaynie Lara met with Holmes on October 30, 2008.  Holmes, although

3  accompanied by two shop stewards, refused to make a statement.  A further meeting was

4  scheduled for November 3, 2008, to accommodate Holmes' request to have legal counsel

5  attend.  Nevertheless, Holmes  appeared at that meeting without counsel and refused

6  again to make any statement, demanding instead that his allegations of racism against

7  Shaw be referred to the San Francisco Human Rights Commission.

8      On November 6, 2008, Holmes received a letter from Ms. Lara formally terminating

9  his employment, based on the series of incidents in October 2008 in which Holmes had

10 repeatedly violated THC's code of professional conduct.  The letter stated that Holmes was

11 being terminated for

12

13     making verbally abusive comments to a fellow worker and to a union business
   representative; intimidating and mistreating Housing Services staff; circulating

14     a petition filled with false statements that defamed our organization, our
   Executive Director, and the SEIU 1021, and which falsely undermines the

15     credibility and integrity of our employment policies and procedures; for
   interfering with employees in their performance of his/her assigned duties

16     during working hours; and for being absent from your job without your
   supervisor's authorization

17 during the ten-day period between October 14, 2008 and October 23, 2008.

18     The letter specifically cited Holmes' October 14, 2008 altercation with Mr. Duigenan

19 and Mr. Lamparas in which he called them "racist;" the October 21, 2008 circulation of the

20 petition against Shaw; and Holmes' disruptive and intimidating conduct on October 23,

21 2008 in pressuring co-workers into signing the petition.

22     On November 10, 2008, Holmes submitted a written request for informal hearing on

23 his termination, the initial step in the grievance process.  That informal meeting was held on

24 November 14, 2008, at which Holmes, represented by a Union shop steward, once again

25 refused to make any statement or offer any defense of his conduct cited in support of the

26 termination.  On the same date, the HR Department sent Holmes a letter confirming that

27 THC's decision to terminate was reconfirmed and remained in effect.

28     Holmes signed a grievance dated November 20, 2008, which the Union delivered to

THC on his behalf on November 21, 2008.  The grievance alleged violations of §§ 7 and 8 of the National Labor Relations Act, and also cited three Articles from the CBA, and requested that Holmes be reinstated to his position at the SRO Collaborative.

On November 24, 2008 THC responded to Holmes' grievance with a letter indicating that the Union had failed to request mediation within three working days following post-hearing confirmation of the termination, as required by the CBA's special grievance procedure governing terminations, and that the request was thus untimely.  Further e-mail correspondence between THC and the Union ensued, in which the Union sought non-binding mediation and later arbitration of the grievance, and THC reaffirmed its position that the grievance was untimely under the Union contract.  However, THC agreed to proceed to final and binding arbitration.

Mr. Lamparas states in his declaration he assisted in the early stages of this grievance by seeking to arrange for a mediation regarding the termination, but he recalls that THC declined to participate.  He also recalls being asked by the Union to make a recommendation regarding whether the grievance should be pursued to arbitration.  He states that while he felt that the case "was not a clear winner in arbitration because of the circulation of the Local 87 letter and the other events alleged in the termination notice," he nevertheless recommended that the Union pursue it to arbitration (despite Holmes' having called him a "racist").  Holmes testified in his deposition that he had a conversation with Mr. Lamparas after his discharge, in which Mr. Lamparas advised him that the Union had elected to move the case to arbitration.

The Union requested a list of arbitrators in the Federal Mediation and Conciliation Service, but asserts that THC subsequently declined to strike from that list.  According to counsel for the Union in this action (who also represents Local 1021 in labor arbitrations, mediations, and collective bargaining), THC indicated in conversations with counsel's office in April 2010 that it was reluctant to, or unwilling to, proceed to arbitration on this matter, because, by that time, Holmes "had filed litigation involving the very same issues."  Thus, SEIU did not exercise its right to file a petition to compel arbitration of the underlying

United States District Court
For the Northern District of California

1   dispute in light of the fact of the filing of the litigation, and Holmes' stated position that he

2   did not want to proceed to arbitration and wanted the lawsuit to resolve his various claims.

3          Meanwhile, on January 21, 2009, Holmes filed a charge with the National Labor

4   Relations Board (NLRB) regarding his termination, complaining that it was racially

5   discriminatory, and that he was terminated in retaliation for his Union activities (complaints

6   of discrimination on behalf of himself and his co-workers).  On January 22, 2009, the NLRB

7   Regional Director requested a response from THC to Holmes' claims.  However, on

8   January 23, 2009, the Regional Director advised that the NLRB was deferring making a

9   determination so that the issue could be processed under the grievance/arbitration

10  provision of the CBA.

11         On July 8, 2009, THC advised the NLRB that it was unwilling to waive timeliness in

12  order to process the grievance upon which the charge was based.  Accordingly, the NLRB

13  took the charge out of deferral status and resumed its investigation.  The NLRB requested

14  a detailed substantive response from THC, including production of personnel files, code of

15  conduct policies, investigation materials, and sworn affidavits from THC personnel.

16         On August 31, 2009, the NLRB Regional Director wrote to Holmes to advise that,

17  having carefully investigated and considered his charge, the Board had determined that

18  there was insufficient evidence to establish that THC had violated federal labor law as

19  alleged and that Holmes' charge was accordingly being dismissed.  The letter further

20  advised Holmes of his right to appeal the decision, but no appeal was ever taken.  As

21  Holmes failed to timely appeal the regional director's decision and order, the decision

22  became a final decision of the Board.  NLRB Rules and Regulations § 102.67(b), (f), 29

23  C.F.R. § 102.67(b), (f).

24         Following his termination from THC, Holmes embarked on what the THC defendants

25  characterize as a "campaign" of publicly vilifying both THC and Shaw personally over

26  Holmes' claims of race discrimination and mistreatment.  In his deposition, Holmes testified

27  that he organized a series of five or six public "protests" against THC and Shaw.  The first

28  took place in July 2009 at a San Francisco  bookstore where Shaw was scheduled for an

United States District Court
For the Northern District of California

1    engagement to promote his new book.  Other protests were conducted in front of THC

2    offices on Hyde Street and Turk Street throughout July and August 2009.  On each

3    occasion, Holmes, accompanied by several former co-workers and tenant supporters,

4    paraded on the sidewalk with placards, including one showing a photograph of Shaw with a

5    Hitler-style mustache that Holmes stated was meant to signify that Shaw was "arrogant,"

6    "abusive," and "racist."

7        In August 2009, Holmes, along with several co-workers and tenant activists,

8    picketed Shaw's home in Berkeley, where they paraded with placards and distributed

9    flyers.  Holmes also contacted several out-of-state bookstores where Shaw was scheduled

10   for appearances to promote his new book.  Holmes testified that he wanted to let them

11   know he was in a labor dispute with Shaw, and where they could obtain more information

12   about the dispute.

13       In addition, Holmes made blog postings accusing both THC and Local 1021's

14   management of being "racist thugs," and appeared before the San Francisco Human

15   Rights Commission, demanding an investigation of THC and Shaw personally for racist

16   employment practices.

17       Holmes filed the present action on December 9, 2009.  In the second amended

18   complaint ("SAC"), he asserts eight causes of action: (1) a claim of unfair labor practices,

19   under § 185 of the Labor Management Relations Act ("LMRA"), to enforce provisions of the

20   National Labor Relations Act ("NLRA") §§ 157 and 158, against THC and SEIU; (2) a claim

21   of discrimination based on race, under § 1981, and also alleging retaliation, against all

22   defendants; (3) a claim of discrimination and harassment on the basis of race, color, and

23   age, under the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2, against THC; (4) a

24   claim of retaliation under Title VII, 42 U.S.C. § 2000e-2(a), against THC; (5) a claim of

25   harassment on account of race or national origin, under Title VII, 42 U.S.C. § 2000e-2(a),

26   against THC, Shaw, and Geta; (6) a claim of discrimination on the basis of race, color, and

27   age, under the California Fair Employment and Housing Act ("FEHA"), California Gov't

28   Code § 12940(a), against THC; (7) a claim of retaliation, under FEHA, California Gov't

United States District Court

For the Northern District of California

1  Code § 12940(h), against THC; and (8) a claim of harassment on the basis of race, under

2  FEHA, California Gov't Code § 12949(j), against THC, Shaw, and Geta.  He seeks

3  compensatory and punitive damages, as well as reinstatement to his job.

**DISCUSSION**

4

5  A.    Legal Standard

6      Summary judgment is appropriate when there is no genuine issue as to material

7  facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

8  56(c)(2).

9      A party seeking summary judgment bears the initial burden of informing the court of

10  the basis for its motion, and of identifying those portions of the pleadings and discovery

11  responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

12  v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome

13  of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a

14  material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a

15  verdict for the nonmoving party.  Id.

16      Where the moving party will have the burden of proof at trial, it must affirmatively

17  demonstrate that no reasonable trier of fact could find other than for the moving party.

18  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 994 (9th Cir. 2007).  On an issue where

19  the nonmoving party will bear the burden of proof at trial, the moving party can prevail

20  merely by pointing out to the district court that there is an absence of evidence to support

21  the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the moving party meets its

22  initial burden, the opposing party must then set forth specific facts showing that there is

23  some genuine issue for trial in order to defeat the motion.  See Fed. R. Civ. P. 56(e);

24  Anderson, 477 U.S. at 250.

25  B.    THC Defendants' Motion

26      The THC defendants seek summary judgment as to all causes of action asserted

27  against them – the LMRA claim, the Title VII discrimination and retaliation claims, and the

28  FEHA discrimination and retaliation claims, all asserted against THC; and the § 1981

15

discrimination and retaliation claim, and the Title VII and FEHA harassment claims,

asserted against THC, Shaw, and Gaeta.[4]  They also seek summary judgment as to

Holmes' prayer for reinstatement.

1.    LMRA claim

Holmes alleges in the first cause of action for violation of the LMRA that THC and

SEIU "failed to carry out [their] responsibilities under the terms of [the CBA];" that such

"actions and conduct" denied him fair representation and was an unfair labor practice

prohibited by 29 U.S.C. § 158(b); and that such actions by THC denied him "his rights as

an employee guaranteed by 29 U.S.C. § 158(a) . . . and was therefore an unfair labor

practice as prohibited by that section."

An individual employee may bring suit against his employer for breach of a collective

bargaining agreement.  DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 163

(1983).  Where an employee asserts claims involving "uniquely personal rights" regarding

wages, hours, overtime pay, and wrongful discharge, a direct suit against the employer is

proper under § 301.  Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976).

Here, although the allegations in the first cause of action are not entirely clear,

Holmes appears to be alleging a "hybrid § 301/fair representation claim," see DelCostello,

462 U.S. at 163-65 – a claim for breach of a collective bargaining agreement under the

LMRA and for breach of the duty of fair representation under the NLRA.

An employee can support an action for breach of the collective bargaining
agreement, brought solely against the employer, by showing that the union
violated its duty of fair representation.  In such a case, the employee bears
the burden of proving two claims-first, that the employer breached the
collective bargaining agreement, and second, that the labor union breached
its duty of fair representation.

Soremekun, 509 F.3d at 987 (citing DelCostello, 462 U.S. at 165 ("The employee may, if he

chooses, sue one defendant and not the other; but the case he must prove is the same

_____

   [4]  At the hearing on the present motions, plaintiff's counsel stated that plaintiff did not
oppose the motion as to the age discrimination/harassment claims.  Accordingly, summary
judgment is GRANTED as to those claims.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    whether he sues one, the other, or both.")).

2         The THC defendants argue that Holmes' claim fails, because he cannot show either

3    that the Union breached its duty of fair representation in processing his grievance; or that

4    the grievance, but for lack of fair representation, would have succeeded, because the

5    termination violated conditions or limitations on termination imposed by the union contract.

6         Defendants contend that Holmes cannot show that the grievance would have

7    succeeded but for the inadequate representation, because he cannot show that his

8    termination by THC was motivated by race discrimination as alleged in the SAC.

9    Defendants assert that the undisputed record shows that Holmes was terminated for

10   repeated instances of workplace misconduct, which were both disruptive and abusive of co-

11   workers, and, in accumulation, created a hostile work environment and violated THC's code

12   of professional conduct and its anti-harassment policy.

13        Defendants argue that federal courts have consistently recognized that terminations

14   based on such grounds are supported by adequate justification and have accordingly

15   granted summary judgment to employers in hybrid LMRA cases (citing N.L.R.B. v.

16   Deauville Hotel, 751 F.2d 1562, 1570-71 (11th Cir. 1985); N.L.R.B. v. General Indicator

17   Corp., Redco Div., 707 F.2d 279, 282-83 (7th Cir. 1983)).

18        Defendants also assert that it is unclear which unfair labor practice(s) Holmes is

19   alleging were committed by defendants.  They contend that to the extent that Holmes

20   intends to allege that his termination was in retaliation for filing union-related grievances,

21   his claim is legally without basis because it is preempted under San Diego Building Trades

22   Council v. Garmon, 359 U.S. 236, 244-45 (1959).

23        The Garmon doctrine holds that the national interest in having a consistent body of

24   labor law requires that the NLRB have exclusive jurisdiction to regulate activity that could

25   arguably constitute unfair labor practices.  See Adkins v. Mireles, 526 F.3d 531, 539 (9th

26   Cir. 2008).  Under the Garmon doctrine, Holmes was required to present any claims of

27   unlawful labor practices by an employer to the NLRB, including any claims of harassment

28   or retaliation for union-related grievances or other activities.  In addition, an employee who

United States District Court

For the Northern District of California

1   presents such claims as a charge to the NLRB is required to follow the Board's exclusive

2   jurisdiction to conclusion, with the right to seek federal court relief only by way of appeal

3   from an NLRB adverse final determination.  29 U.S.C. § 160(f).

4          Here, defendants assert, Holmes filed such a charge with the NLRB, which

5   dismissed it following an investigation in which it found insufficient supporting evidence.

6   Holmes, though entitled to appeal, never did so.  Thus, defendants argue, any claim he

7   now seeks to bring against THC for unfair labor practices in violation of NLRA § 158(a) are

8   foreclosed and beyond this court's jurisdiction.

9          Defendants also contend that Holmes' § 158(a) claim against THC is without factual

10  basis, because the activities that Holmes appears to be claiming were "union-related" were

11  not "protected activity" under the LMRA, as they involved intramural disputes between

12  Holmes and local union management over the validity of several grievances he made

13  himself or promoted for others, and over his efforts to retain his shop steward position at

14  472 Turk Street.

15         In opposition, Holmes argues that he has established a claim for violation of NLRA

16  §§ 157 and 158, "as reflected by the substantial credible evidence in the record."  He cites

17  generally to his own declaration, and to the declarations of Sonya Perry, Alexandra

18  Goldman, Ramses Teon-Nichols, Kylar Bryan, Megan Smith, Aadrian K'hn, Vaenisya

19  Rodgers, Pietra Larra, Razzu Engen, and Carmen Aguirre, filed in support of his opposition

20  to both motions for summary judgment.  However, he does not point to the portions of the

21  declarations that he believes support his claim.

22         With regard to defendants' argument that he cannot prevail on his claim against THC

23  under § 158 because he cannot show that his termination was motived by race

24  discrimination, Holmes argues that "the evidence referred to above directly contradicts that

25  assertion."  The only specific evidence he cites, however, is ¶¶ 30 through 91 of his own

26  declaration; the declaration of Sonya Perry, which he claims "reflect[s] [THC's] historical

27  pattern and practice showing discrimination against African American (Black) employees,

28  and particular actions and conduct directed toward Plaintiff;" and the declaration of

United States District Court

For the Northern District of California

1    Alexandra Goldman, which he claims "relat[es] to her handling of Plaintiff's termination

2    grievance."

3          Holmes also argues that THC's "charge of workplace misconduct" is without merit,

4    and not substantiated anywhere in the record.  He claims that THC has violated §§ 157 and

5    158(a) by "interfering and obstructing Holmes in the exercise of his rights as a union

6    member and terminating his employment without just cause in violation of the [CBA] with

7    SEIU Local 1021."  Holmes contends that his termination for workplace misconduct was in

8    actuality retaliation for his union activities as shop steward.  He also asserts that "nothing in

9    the Garmon doctrine can be construed to oust this Court of its jurisdiction in this action."

10         The court finds that the motion must be GRANTED, because Holmes has failed to

11   provide specific evidence establishing a genuine issue as to any material fact.  The only

12   "evidence" he cites to is to ¶¶ 30-91 of his own declaration, plus a general reference to the

13   declarations of two former co-workers – Ms. Perry and Ms. Goldman.[5]

14         It is impossible to say which portion of his declaration Holmes is proffering to create

15   a triable issue of fact, since he fails to specify which of the 61 cited paragraphs the court

16   should consider as evidence.  It is not the court's task to scour the record in search of a

17   genuine issue of triable fact.  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

18   court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence

19   that precludes summary judgment."  Id.; see also Simmons v. Navajo County, Ariz., 609

20   F.3d 1011, 1017 (9th Cir. 2010).  Moreover, the Holmes declaration contains little in the

21   way of "facts," as it consists mostly of Holmes' opinions and conclusions.

22         As for the Perry and Goldman declarations, the court finds that they do not create a

23   triable issue as to this claim.  Ms. Perry is African-American, and worked at THC until she

24   was terminated.  She states in her declaration that THC/Gaeta discriminated against other

25   _____

26         [5] In addition to his own declaration and the declarations of Ms. Perry and Ms. Goldman,
     Holmes filed seven other declarations with his opposition.  However, apart from a vague
27   reference to "the substantial credible evidence in the record," he does not cite to any of those
     seven declarations in his opposition.  The court is not required to review any evidence that is
28   not specifically referenced in the plaintiff's opposition to the motion for summary judgment.
     See Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029-31 (9th Cir. 2001).

United States District Court
For the Northern District of California

African-American women in terms and conditions of employment.  Holmes apparently intends this evidence to show that he was discriminated against because of his race, although, as with his own declaration, he does not explain how this evidence creates a triable issue of fact.  In any event, the court finds that Ms. Perry's statement that THC/Gaeta discriminated against African-American women is not sufficient to establish a triable issue with regard to Holmes' LMRA claim.

Ms. Goldman was a shop steward who initiated a grievance on behalf of Holmes.  She states that in her opinion, THC violated the CBA when it terminated Holmes.  She goes through the three reasons given in the termination notice – that Holmes called Mr. Duigenan and Mr. Lampras "racist;" that Holmes "intimidated" two THC employees during work time through e-mails and phone calls; and that Holmes circulated a letter making "defamatory and false statements" against Shaw – and finds all three reasons to be unjustified.

Ms. Goldman considers that the conversation in which Holmes called Mr. Duigenan and Mr. Lamparas "racist" to have been protected union activity, because it concerned a union grievance, and that the action of circulating the letter about Shaw was also protected union activity.  She believes that if there are racial tensions in an organization, an employee has the right to say so.  She also contends that there is no evidence from any employees that Holmes intimidated them, and that defendants have provided only the statements of the Housing Services Director who interviewed them after receiving complaints.  She asserts that e-mailing or telephoning one's fellow employees cannot be considered "eggregious violations[ ] of the Collective Bargaining Agreement."[6]

The court finds that Ms. Goldman's statements are irrelevant to Holmes' LMRA claim, given that he filed a charge with the NLRB regarding his termination, which was subsequently dismissed by the NLRB as lacking in evidence, and which dismissal Holmes failed to appeal.

---

[6]  However, the issue was that Holmes' actions violated THC's work rules and anti-harassment policy, not that they violated the CBA.

United States District Court

For the Northern District of California

1    To the extent that Holmes cites the declarations of Mr. Teon-Nichols, Ms. Rodgers,

2    and Ms. Perry to support his claim that he was terminated in retaliation for his union

3    activities – the same activities cited by THC as abusive workplace misconduct justifying his

4    initial suspension and later termination – the court notes that Local 1021 has disavowed

5    Holmes' cited activities as unauthorized.

6    Moreover, even if those declarations were factual in identifying Holmes' shop

7    steward status as the cause or source of THC's adverse employment actions, that

8    evidence would not save Holmes' claims from summary judgment, as the NLRB has

9    exclusive jurisdiction over NLRA § 7 and § 8 claims.  See Garmon, 359 U.S. at  244-45;

10   Adkins, 526 F.3d at 539.

11   As for Holmes' claim that he was unfairly treated by THC in the termination

12   grievance process, and Goldman's assertion in her declaration that Holmes was unfairly

13   denied opportunities to present his defense against termination following his placement on

14   administrative leave in October 2008, the court finds that such claims are directly undercut

15   by Holmes' testimony at his deposition, where he conceded that during several informal

16   hearings and conferences prior to termination, he consistently refused to make any

17   statement in his own defense or offer any other evidence on his own behalf.

18   Finally, Holmes has failed to provide evidence sufficient to raise a triable issue as to

19   whether his grievance was meritorious – that is, that his termination was unjustified and

20   motivated by discrimination.  See Soremekun, 509 F.3d at 987.  An employer does not

21   violate a union contract by terminating an employee for disruption of the workplace through

22   "personal gripes" that are not protected activity.  See Deauville Hotel, 751 F.2d at 1570-71;

23   see also General Indicator, 707 F.2d at 282-83 (employer did not violate union contract by

24   firing employee who was interfering with other employees during work to secure their

25   support for replacement of union shop steward).

26   2.    Title VII, § 1981, and FEHA claims

27   Defendants contend that Holmes has no claim for discrimination under Title VII,

28   FEHA, or § 1981, because he cannot establish a prima facie case of racial discrimination in

21

United States District Court

For the Northern District of California

1   connection with his termination, and because he has no evidence that THC's articulated

2   reason for terminating him was pretextual.  The burden-shifting format established in

3   McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) is applicable to Title VII and

4   § 1981 cases, and is also applicable to cases alleging discrimination under FEHA.  See

5   Surrell v. California Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008) (applying

6   McDonnell Douglas to Title VII and § 1981 claims); Guz v. Bechtel National, Inc., 24 Cal.

7   4th 317, 354 (2000) (applying McDonnell Douglas to FEHA claims).

8       Under McDonnell Douglas, a plaintiff must first prove a prima facie case of

9   discrimination by showing that he is a member of a protected class; that he was performing

10  his job duties in a competent and satisfactory manner; that he suffered an adverse

11  employment action; and that similarly situated individuals outside the protected class were

12  treated more favorably, or that other circumstances surrounding the adverse employment

13  action give rise to an inference of discrimination.  Hawn v. Executive Jet Mgmt., Inc., 615

14  F.3d 1151, 1156 (9th Cir. 2010); Guz, 24 Cal. 4th at 355-56.  The Ninth Circuit has

15  repeatedly emphasized that a plaintiff's burden in establishing a prima facie case of

16  discrimination is "minimal."  Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1094 (9th

17  Cir. 2005).

18      Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to

19  the employer to offer a legitimate, nondiscriminatory reason for the adverse employment

20  decision.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).

21  An employer's reasons need not rest on true information.  Villiarimo v. Aloha Island Air,

22  Inc., 281 F.3d 1054, 1063 (9th Cir. 2002).  Instead, courts require only that the employer

23  "honestly believed its reasons for its actions, even if its reason is foolish or trivial or even

24  baseless."  Id. (citation and quotation omitted).

25      If the employer meets this burden, the plaintiff must then raise a triable issue of

26  material fact as to whether the defendant's proffered reasons for its actions are a mere

27  pretext for unlawful discrimination.  Hawn, 615 F.3d at 1155.  A plaintiff may do this by

28  producing either direct evidence of discriminatory motive, which need not be substantial, or

22

United States District Court

For the Northern District of California

1   circumstantial evidence that is "specific and substantial" evidence of pretext.  Godwin v.

2   Hunt Wesson, Inc., 150 F.3d 1217, 1221-22 (9th Cir. 1998).  If the plaintiff succeeds in

3   demonstrating a genuine issue of material fact as to whether the reason advanced by the

4   employer was a pretext for discrimination, then the case proceeds beyond the summary

5   judgment stage.  See Reeves, 530 U.S. at 143.

6       Here, defendants contend, Holmes cannot meet the second or fourth elements of

7   the prima facie case.  First, they argue that Holmes cannot show that he was performing

8   his job in a satisfactory manner, as the evidence shows that he was disruptive and was

9   disciplined at various times for violations of THC's work rules.

10      Second, defendants assert that Holmes has no evidence to suggest a discriminatory

11  motive in any of the actions taken against him.  They note that at his deposition, he was

12  unable to identify any evidence of race discrimination in the events leading to his January

13  2008 suspension, and made only generalized claims that Gaeta and Shaw "disrespected"

14  him and discriminated against workers of color at THC.  Similarly, he was unable to identify

15  any evidence suggesting a discriminatory motive by THC in the events leading to his

16  termination, or in the termination itself.

17      When asked at his deposition about the altercation with Mr. Lamparas and Mr.

18  Duigenan on October 14, 2008, in which he called them "racist," Holmes' only comment

19  was that he had noticed them talking and laughing together moments before.  Although he

20  conceded that he could not hear what Mr. Lamparas and Mr. Duigenan were talking and

21  laughing about, he testified that he noticed them looking at him, which he considered "very

22  rude" and "racially motivated."

23      When asked to cite examples apart from his own experience, he could only point to

24  THC's promotion of Gaeta instead of four or five minority-race Housing Services

25  employees, only one of whom (Mr. Teon-Nichols) had actually applied for the position, as

26  well as a subsequent lateral transfer of a co-worker (Rodgers), which Holmes claimed was

27  involuntary, but which defendants' evidence shows was in fact voluntary.

28      In opposition, Holmes argues that he has "easily" established a prima facie case of

United States District Court

For the Northern District of California

1  discrimination based on race, with regard to his termination.  He contends that he has

2  shown that he is a member of a protected class, that he was satisfactorily performing all his

3  duties and complying with the rules of his employment, and that he was terminated from his

4  employment.  He asserts that the likely reason for the termination was his race and color.[7]

5       In support of this argument, Holmes cites to his own declaration, at ¶¶ 30 through

6  91; the Perry declaration, which he claims "reflect[s] [THC's] historical pattern and practice

7  showing discrimination against African American (Black) employees, and particular actions

8  and conduct directed toward Plaintiff;" and the Goldman declaration, which he asserts

9  "relat[es] to her handling of Plaintiff's termination grievance."

10      As indicated above with regard to the first cause of action, it is not clear which

11  portions of his declaration Holmes believes constitute evidence that he was performing his

12  job in a satisfactory manner, or which portions of his declaration or the Perry or Goldman

13  declarations he believes support his assertion that "the likely reason" for his termination

14  was race and color.  The court is not required to review evidence that is not specifically

15  referenced in the plaintiff's opposition to the motion for summary judgment, <u>Carmen</u>, 237

16  F.3d at 1029-31; nor is it obligated to scour the record in search of a genuine issue of

17  triable fact, <u>Keenan</u>, 91 F.3d at 1279.

18       Nevertheless, assuming for the sake of argument that Holmes has established a

19  prima facie case of discrimination, the court also considers whether the THC defendants

20  have articulated a legitimate, non-discriminatory reason for his termination, and whether

21  Holmes has provided any evidence sufficient to raise a triable issue as to whether

22  defendants' stated reason is a pretext for discrimination.

23      Defendants contend that the evidence shows that Holmes was terminated only after

24  a formal investigation by THC's HR Department.  As set forth in the declarations filed in

25  support of defendants' motion, THC gathered information from involved witnesses,

26

27 ─────────────────

       [7]   At the hearing on the present motions, Holmes' counsel indicated that the
28  discrimination claims are based on the termination only, not on the suspension or any other
   alleged adverse action.

United States District Court

For the Northern District of California

1   including Holmes' co-workers, who substantiated reports of both disruption and intimidation

2   by Holmes in their workplace encounters with him over the disputes he had with the union

3   and grievances with THC.

4          Defendants argue further that Holmes cannot demonstrate that THC's reasons for

5   terminating him were pretextual.  They assert that Holmes has no evidence to show that

6   the cited instances of misconduct were concocted or exaggerated by THC or its HR

7   Department in the course of the investigations.  Nor, defendants argue, does Holmes have

8   any evidence that his termination on those grounds somehow involved unequal treatment

9   of him in comparison to other employees who may have violated THC's workplace code of

10  conduct or its anti-harassment policy.

11         In opposition, Holmes asserts that "considering the overwhelming evidence in the

12  record as referred to" in the argument relating to the LMRA claim, THC cannot articulate a

13  legitimate nondiscriminatory reason for terminating his employment.  However, as

14  discussed above, he fails to point to specific evidence to support his argument.

15         Holmes claims in his declaration that his termination was unwarranted.  However,

16  his subjective belief that his termination was unnecessary or unwarranted is not sufficient to

17  create a genuine issue of material fact.  See Cornwell v. Electra Cent. Credit Union, 439

18  F.3d 1018, 1028 n.6 (9th Cir. 2006).  In addition, "[a] plaintiff cannot defeat summary

19  judgment simply by making out a prima facie case."  Wallis v. J.R. Simplot Co., 26 F.3d

20  885, 890 (9th Cir. 1994) (quoting Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir.

21  1991)).  Rather, the plaintiff must produce "specific, substantial evidence of pretext."  Id.

22  (quoting Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983)).

23         Ms. Goldman also states in her declaration that Holmes' termination was improper.

24  This is not sufficient to create a triable issue as to whether defendants' proffered

25  explanation – along with the evidence compiled by THC through its HR investigation, on

26  which it relied to support the decision to terminate Holmes – was a pretext for

27  discrimination.  A plaintiff employee may not defeat a defendant employer's motion for

28  summary judgment merely by denying the credibility of the defendant's proffered reason for

United States District Court

For the Northern District of California

1    the challenged employment action; he must provide evidence to support his position.  See

2    Cornwell, 439 F.3d at 1028 n.6.

3        Holmes' response, however, is to simply deny that he engaged in the misconduct

4    that formed the basis for his November 2008 termination.  The issue is not whether THC

5    was correct in concluding that Holmes engaged in this misconduct and that it warranted his

6    termination, but instead whether THC had a reasonable basis for those determinations in

7    the investigation record it developed.  See Villiarimo, 281 F.3d at 1063.  Here, THC's HR

8    Department determined, through its investigation, that Holmes engaged in repeated

9    instances of workplace disruption, verbal abuse, and coercion of his co-workers.

10       As for Holmes' contention that THC engaged in unfair treatment of three African-

11   American employees (Vaneisha Rodgers, Sonya Perry, and Kylar Bryan), each of whom

12   provided a declaration stating that he/she was subjected to unfair treatment by THC

13   through unjustified transfers, promotion denial, or lack of supervisory support, the court

14   finds that this is not sufficient evidence to create a triable issue as to whether Holmes was

15   terminated because of his race.  Assertions of unfair treatment of other THC employees

16   does nothing to address Holmes claim that he was treated unfairly.

17       Holmes provides no evidence showing that other similarly situated employees who

18   were not in the protected class were treated more favorably, with the exception of the

19   promotion of Gaeta to the position of Director of Housing Services, and even then, Holmes

20   makes no showing that any other applicant was similarly situated – that is, that any other

21   applicant was as qualified to hold the position.

22       The court finds that the motion must be GRANTED as to the Title VII, § 1981, and

23   FEHA claims of discrimination based on race.  Holmes has provided no evidence sufficient

24   to create a triable issue as to whether the THC defendants' articulated reason for

25   terminating his employment was a pretext for discrimination.

26       The motion filed by the THC defendants purports to seek summary judgment on the

27   retaliation and harassment claims, but does not actually address those claims.  At the

28   hearing, the court asked counsel for the THC defendants whether they intended to seek

1   summary judgment as to the retaliation and harassment claims – in addition to the

2   discrimination claims – and counsel responded that they did.  Counsel referred the court to

3   portions of defendants' brief that addressed the Title VII and § 1981 discrimination claims.

4   The court has carefully reviewed those arguments, and finds no mention of the standard to

5   be applied to harassment or retaliation claims.

6   Holmes alleges race-based harassment under both Title VII and FEHA (in addition

7   to discrimination).  To establish a prima facie hostile work environment claim under either

8   Title VII or FEHA, a plaintiff must show that he was subjected to verbal or physical conduct

9   because of his race, that the conduct was unwelcome, and that the conduct was sufficiently

10  severe or pervasive to alter the conditions of the plaintiff's employment and create an

11  abusive work environment.  Manatt v. Bank of America, 339 F.3d 792, 798 (9th Cir. 2003)

12  (Title VII); Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 283 (2006) (FEHA).

13  Holmes also alleges retaliation under Title VII, FEHA, and § 1981, all of which

14  prohibit employers from discriminating against an employee because that employee has

15  engaged in an activity protected by those statutes, or because the employee has opposed

16  any practice that the employee reasonably believes is unlawful under such provisions.

17  Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006) (Title VII); Yanowitz v. L'Oreal USA,

18  Inc., 36 Cal. 4th 1028, 1043 (2005) (FEHA); Manatt, 339 F.3d at 800-01 (§ 1981).  To make

19  out a prima facie case of retaliation under Title VII, FEHA, or § 1981, a plaintiff must

20  establish that he engaged in a protected activity, such as the filing of a complaint alleging

21  racial discrimination, that his employer subjected him to an adverse employment action,

22  and that a causal link exists between the protected activity and the adverse action.  Freitag,

23  468 F.3d at 541; Yanowitz, 36 Cal. 4th at 1042; Manatt, 339 F.3d at 800-01.

24  Claims of harassment and retaliation are distinct from claims of discrimination.

25  Because defendants argued only the standard for summary judgment as to discrimination,

26  and because the moving papers were not sufficient to put plaintiff on notice of a need to

27  respond as to those claims (and because plaintiff did not respond), the court DENIES the

28  motion as to the harassment and retaliation claims.

United States District Court
For the Northern District of California

C.    SEIU's Motion

SEIU seeks summary judgment as to the claims asserted against it – the first cause of action under § 1981, and second cause of action under the LMRA.

1.    Section 1981 claim

SEIU argues that the evidence does not establish a violation of § 1981, as Holmes cannot establish disparate treatment by SEIU on account of his race, and cannot prove that SEIU retaliated against him for engaging in protected activity under § 1981.

First, SEIU contends that Holmes has no direct evidence of discrimination – that is, no evidence that the Union deliberately failed to process grievances regarding race discrimination; that the Union's staff persons or stewards directly participated in racially discriminatory conduct; that the Union operates a hiring hall in a discriminatory fashion, or that any Union representative made any discriminatory statements.  Moreover, SEIU asserts, Holmes cannot establish discrimination where (as here) SEIU filed and processed grievances on his behalf and successfully negotiated a favorable settlement agreement.

Second, SEIU argues that Holmes cannot establish that the Union discriminated against him under the McDonnell-Douglas burdens-shifting analysis.  SEIU contends that Holmes cannot establish a prima facie case of discrimination, because he cannot show that SEIU treated him less favorably than it did similarly-situated individuals of a different race.  SEIU notes that Holmes has not alleged or demonstrated that Union representatives were more attentive or responsive to non-African-American members, or that they filed or pursued more grievances on behalf of non-African-American members than they did on behalf of African-American members.

SEIU argues further that even if the court were to find that Holmes can establish a prima facie case, SEIU had legitimate, non-discriminatory reasons for declining to file grievances in some instances.  In his declaration, Mr. Lamparas explains that he did not advance a "job posting" grievance beyond the mediation step of the grievance procedure, because he concluded that under the CBA, THC was not obligated to post for a non-bargaining unit position; that he did not pursue a charge or a grievance regarding the

United States District Court
For the Northern District of California

1   alleged unilateral change by THC in employees' work hours, because the change did not

2   affect the start time or the end time of employee shifts, and because THC had discussed

3   the proposal with affected staff; and that he did not file a grievance regarding THC's

4   implementation of the "Check Security Policy" because he concluded that it was a valid

5   work procedure that did not affect SEIU members' terms and conditions of employment,

6   and did not violate the contract.

7        As for the alleged failure to proceed to arbitration on the termination claim, SEIU

8   contends that the evidence shows that it was prepared to go to arbitration, but that THC

9   declined, because Holmes had filed the present lawsuit.  SEIU argues that these are

10  legitimate, non-discriminatory reasons for not filing or pursuing grievances and/or

11  arbitration, and Holmes has no evidence showing that these reasons are pretextual.

12       With regard to retaliation, SEIU also contends that Holmes cannot satisfy the

13  standard.  The McDonnell Douglas framework is also used to analyze claims of retaliation

14  under § 1981.  To prove a retaliation claim, a plaintiff must first establish a prima facie case

15  by showing that he engaged in activity protected by § 1981, such as opposing unlawful

16  discrimination or making a charge of employment discrimination; that he was thereafter

17  subjected to a materially adverse action; and that there was a causal connection between

18  the adverse action and his protected activity.  See Surrell, 518 F.3d at 1107-08.

19       In the SAC, Holmes alleges that he made non-specific complaints about racism in

20  the workplace, and that on one occasion, he accused Mr. Lamparas and Mr. Duigenan of

21  being "racist;" and has alleged that SEIU did not assist him with the filing of grievances on

22  his behalf or on behalf of other "people of color."  SEIU asserts that even if these facts are

23  true, there is no evidence in the record of any causal connection between SEIU's refusal to

24  file certain grievances, and Holmes' complaints about racism in the workplace.

25       To establish causation, a plaintiff must show by a preponderance of the evidence

26  that engaging in the protected activity was one of the reasons for the adverse employment

27  decision and that but for such activity the decision would not have been made.  Villiarimo,

28  281 F.3d at 1064.  The causal link may be established by an inference derived from

United States District Court

For the Northern District of California

1  circumstantial evidence, "such as the employer's knowledge that the [plaintiff] engaged in

2  protected activities and the proximity in time between the protected action and allegedly

3  retaliatory employment decision."  <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir. 1987).

4  "[W]hen adverse employment decisions are taken within a reasonable period of time after

5  complaints of discrimination have been made, retaliatory intent may be inferred."

6  <u>Passantino v. Johnson & Johnson Consumer Prods., Inc.</u>, 212 F.3d 493, 507 (9th Cir.

7  2000).

8         Here, SEIU contends, there is no evidence that it responded to Holmes' alleged

9  protected activity in any adverse way.  SEIU notes that Holmes testified at his deposition

10  that even though he accused Mr. Lamparas and Mr. Duigenan to their faces of being

11  "racist," Mr. Lamparas nevertheless filed the grievance that Holmes brought to THC that

12  same day, and later recommended that his termination grievance be moved to arbitration.

13         Moreover, SEIU asserts, even assuming that it did something adverse to Holmes'

14  interests, Holmes cannot show that a reasonable employee would have found the

15  challenged action <u>materially</u> adverse – that is, an action that might dissuade a reasonable

16  employee from making or supporting a charge of discrimination, as required under

17  <u>Burlington Northern and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).  SEIU

18  contends that no reasonable employee would draw a connection between Holmes having

19  railed at Mr. Lamparas and Mr. Duigenan for being "racist," and the level or quality of

20  representation that SEIU provided to Holmes.

21         Holmes provides no substantive opposition to SEIU's motion.  He contends that as a

22  "Black man of African descent," he is a person protected by the provisions of 42 U.S.C.

23  § 1981.  He also characterizes as "frivolous" SEIU's contentions that he has failed to

24  establish disparate treatment on account of his race, that he cannot prove that SEIU

25  retaliated against him for engaging in protected activity under § 1981, and that to the extent

26  he is alleging disparate impact on account of race, that claim is not actionable under

27  § 1981.  He argues that SEIU's contentions are "without merit and cannot dispute the

28  overwhelming evidence in the record," citing generally to the eight declarations he has filed

United States District Court

For the Northern District of California

1    with his opposition.

2        However, Holmes does not link any of the factual assertions in any of his

3    declarations to the § 1981 claim or to SEIU's arguments in its moving papers, and has

4    made no showing of any misconduct by SEIU.  As noted above with regard to Holmes'

5    opposition to the THC defendants' motion, the court is not required to review evidence that

6    is not specifically referenced in the plaintiff's opposition to the motion for summary

7    judgment, Carmen, 237 F.3d at 1029-31; nor to scour the record in search of a genuine

8    issue of triable fact, Keenan, 91 F.3d at 1279.

9        Moreover, the declarations Holmes provides consist largely of "character evidence"

10   regarding Holmes, which is irrelevant here.  In addition, while three of the declarants claim

11   to have been terminated by THC, none of them assert that they ever asked SEIU to file a

12   grievance, let alone that SEIU failed to file a grievance on their behalf or otherwise failed to

13   represent them.

14       The only factual allegation made by Holmes in his declaration that is remotely

15   relevant to the subject of race is the assertion that he accused Mr. Lamparas and Mr.

16   Duigenan of being "racist."  However, this allegation is irrelevant to the question whether

17   SEIU treated Holmes less favorably than it did other similarly situated non-African

18   American members.  Nor do any of the declarants provide evidence that SEIU treated non-

19   African American members more favorably than it did African-American members.

20       The motion is GRANTED.  Holmes has provided no evidence sufficient to create a

21   triable issue as to either discrimination or retaliation under § 1981.  With regard to

22   discrimination, even if the court assumes for the sake of argument that Holmes has

23   established a prima facie case, he has provided no evidence sufficient to raise a triable

24   issue as to whether SEIU's articulated reasons for not pursuing certain grievances were

25   pretextual.  Similarly, with regard to retaliation, Holmes has provided no evidence sufficient

26   to raise a triable issue as to any causal connection between a protected activity and an

27   adverse action involving the Union, or even as to whether he suffered an adverse action at

28   the hands of the Union.

United States District Court

For the Northern District of California

2.      LMRA claim

As noted above, Holmes alleges in the first cause of action for violation of the LMRA that THC and SEIU failed to carry out their responsibilities under the terms of the CBA; that such actions and conduct denied him fair representation and constituted an unfair labor practice prohibited by 29 U.S.C. § 158(b); and that such actions by THC denied him his rights as an employee guaranteed by 29 U.S.C. § 158(a), and therefore constituted an unfair labor practice.  The court interprets this claim as a hybrid § 301/duty of fair representation claim.

SEIU contends that the evidence does not establish a breach of the duty of fair representation.  The duty of fair representation imposes on the exclusive bargaining representative – here Local 1021 – "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177 (1967).  Nevertheless, union discretion is very broad under the duty of fair representation.  The Supreme Court "has long recognized that unions must retain wide discretion to act in what they perceive to be their members' best interests." Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir. 1985).

A two-step analysis must be used to determine if the Union has breached the duty of fair representation.  First, a determination must be made whether the alleged misconduct involves the union's judgment, or whether it was ministerial or procedural.  If the conduct is procedural or ministerial in nature, plaintiff must establish that the challenged act or omission was arbitrary, discriminatory, or in bad faith. Wellman v. Writers Guild of America, West, Inc., 146 F.3d 666, 670 (9th Cir. 1998); Marino v. Writers Guild of America, East, Inc., 992 F.2d 1480, 1486 (9th Cir. 1993).  If, on the other hand, the conduct involves the Union's judgment, the plaintiff may prevail only if the conduct is discriminatory or in bad faith. Id.

A union's conduct is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of

United States District Court

For the Northern District of California

1  reasonableness' as to be irrational." Air Line Pilots Assn., Int'l. v. O'Neill, 499 U.S. 65, 67

2  (1991) (citation omitted).  Conduct can be classified as arbitrary "only when it is irrational,

3  when it is without a rational basis or explanation." Marquez v. Screen Actors Guild, Inc.,

4  525 U.S. 33, 46 (1998).

5       "A union's decision not to arbitrate a grievance that it considers to be meritless is an

6  exercise of its judgment." Wellman, 146 F.3d at 671; Stevens v. Moore Business Forms,

7  Inc., 18 F.3d 1443, 1447 (9th Cir. 1994).  The Ninth Circuit has "never held that a union has

8  acted in an arbitrary manner where the challenged conduct involved the union's judgment

9  as to how best to handle a grievance." Peterson, 771 F.2d at 1254.  To the contrary, the

10  court has "held consistently that unions are not liable for good faith, non-discriminatory

11  errors of judgment made in the processing of grievances," and that "a union's conduct may

12  not be deemed arbitrary simply because of an error in evaluating the merits of a grievance,

13  in interpreting particular provisions of a collective bargaining agreement, or in presenting

14  the grievance at an arbitration hearing." Id.

15       Finally, discriminatory conduct may be established by "substantial evidence of

16  discrimination that is intentional, severe, and unrelated to legitimate union objectives."

17  Amalgamated Ass'n of State, Elec. Ry. & Motor Coach Employees of Am. v. Lockridge, 403

18  U.S. 274, 301 (1971); Beck v. United Food and Com'l Workers Union, Local 99, 506 F.3d

19  874, 880 (9th Cir. 2007).  And to establish bad faith, a plaintiff must show "substantial

20  evidence of fraud, deceitful action or dishonest conduct." Lockridge, 403 U.S. at 299; Beck,

21  506 F.3d at 880.

22       Applying the above standard to the facts, SEIU contends that it is undisputed that in

23  April 2008, the Union successfully negotiated a resolution of the 2007 written warnings, and

24  the three-day suspension.  Holmes participated in that settlement process and signed off

25  on the settlement agreement on April 10, 2008.  SEIU asserts that this settlement was not

26  "irrational," and that Holmes cannot show that it was the product of any fraud, deceit or

27  dishonest conduct.

28       With respect to the termination, Mr. Lamparas states in his declaration that even

United States District Court

For the Northern District of California

1   though he felt the case was of questionable merit because of Holmes' activities, he

2   nonetheless recommended that it go to arbitration.  He did this notwithstanding the fact that

3   Holmes had unjustly accused him of engaging in "racist actions."  SEIU contends that the

4   fact that THC resisted or refused to arbitrate the case does not show that the Union

5   breached any duty that it may have owed to Holmes.

6        The NLRB has held that presenting grievances, filing grievances, and even the filing

7   of "numerous grievances" are protected, concerted activity under § 7 of the Act.  See, e.g.,

8   Ad Art Incorporated, 238 NLRB 1124 (1978), enf'd Ad Art Inc., v. N.L.R.B., 645 F.2d 669

9   (9th Cir. 1980);  Shell Oil Company, 226 NLRB 1193 (1976), enf'd Shell Oil Company v.

10  NLRB, 561 F.2d 1196 (5th Cir. 1977).  SEIU argues that Holmes' claims – such as those

11  regarding SEIU's alleged "refusal" to accept his grievances, and those asserting that his

12  placement on administrative leave in October 2008 was a violation of his union rights – will

13  inevitably involve the court  in substantive construction of the protections granted by NLRA

14  § 7, and the extent to which he either acted within them, or exceeded them – that is,

15  whether his conduct was "arguably protected" by § 7, or "arguably prohibited" by § 8.  SEIU

16  contends that under Garmon, 359 U.S. at 244, the court is without jurisdiction over those

17  claims because the NLRB has exclusive authority to regulate such practices.

18       In opposition, Holmes makes three arguments.  First, he contends that "the

19  substantial credible evidence clearly demonstrates" that Local 1021 breached its duty of fair

20  representation, by "failing and refusing to take the termination of his November 6, 2008

21  termination by [THC] to arbitration."  In support, he cites generally to his own declaration

22  and to the declarations of Ms. Perry and Ms. Goldman, asserting that this evidence "makes

23  clear that the charges upon which Holmes' termination were founded, were baseless

24  leaving no doubt that his termination should have been taken to arbitration."  Holmes claims

25  that "there is no question that [this refusal] was in bad faith, discriminatory and arbitrary,

26  thusly a duty of the fair representation to Holmes."

27       In his second argument, Holmes asserts that SEIU breached its duty of fair

28  representation and THC breached the CBA by terminating him without just cause.  In his

34

United States District Court

For the Northern District of California

1    third argument, Holmes asserts that the district court has jurisdiction over this matter, and

2    that "the purported investigation by NLRB and its dismissal of certain claims made by

3    Holmes against SEIU Local 1021" do not oust this court of jurisdiction over the breach of

4    the duty of fair representation claim.

5        The motion is GRANTED.  As with SEIU's motion for summary judgment as to the

6    § 1981 claim, Holmes has failed to provide any evidence sufficient to raise a triable issue

7    as to whether the Union breached its duty of fair representation.  In particular, Holmes has

8    not provided evidence of any action taken by SEIU in connection with its representation of

9    him that was either arbitrary, or discriminatory, or in bad faith.

10       Much of Holmes' own declaration is not relevant to the question whether SEIU

11   breached its duty of fair representation, including the assertion that he never received a

12   copy of the "findings" resulting from the investigation of his misconduct (which "findings"

13   Holmes agreed had never been placed in his personnel file).

14       With regard to the assertions concerning the mediation, Holmes' claim that SEIU

15   and THC "apparently agreed not to take such matters to arbitration" is without merit, given

16   the fact that the mediation resulted in an excellent settlement for Holmes, and there would

17   therefore have been nothing to arbitrate.  Having signed the agreement and obtained the

18   benefits of it, Holmes cannot now come forward and claim that it was the product of a

19   breach of the Union's duty toward him.

20       Indeed, Holmes acknowledged at his deposition that a grievance under the labor

21   agreement cannot be filed on a low-level discipline like a written warning, and the maximum

22   response would be to provide a "rebuttal" in opposition to the warning.  Thus, to the extent

23   that SEIU was successful in the settlement agreement in expunging all mention of the

24   written warnings from Holmes' personnel file, Holmes obtained more than he was entitled

25   to obtain under the terms of the CBA.  Moreover, a union will not be found to have

26   breached its duty of fair representation merely because it settled a grievance short of

27   arbitration.  See Vaca, 386 U.S. at 192.

28       With regard to Holmes' assertion that he was "elected" as shop steward pursuant to

United States District Court

For the Northern District of California

the "petition" submitted by certain Housing Services staff, but that SEIU and THC "refused to acknowledge" his selection as shop steward, and "refused to accept" his grievance regarding the issue, the duty of fair representation requires the Union to represent employees fairly only with regard to matters as to which it represents all employees under the CBA – rates of pay, wages, hours, and other conditions of employment. See International B'hd of Teamsters, Local 310 v. NLRB, 587 F.2d 1176, 1183 (D.C. Cir. 1978).

An election to shop steward has nothing to do with wages, hours, or terms and conditions of employment. Thus, the dispute over the shop steward issue is irrelevant to the question whether SEIU breached its duty of fair representation. Similarly, any portions of the cited declarations that appear to relate to the Union are also irrelevant, as they concern only the shop steward issue.

With regard to Holmes' assertion that SEIU told him in September 2009 that it would proceed to arbitration on the termination grievance, and that he "learned" in October 2009 that SEIU had no intention of proceeding to arbitration, the undisputed evidence shows that Mr. Lamparas recommended that the termination grievance be arbitrated, and that the Union's lawyers in fact requested and received a list of arbitrators from the Federal Mediation and Conciliation Service, and contacted THC for purposes of selecting the arbitrator (which THC declined to do because Holmes by then had filed the present action).

Similarly, the Goldman declaration adds nothing at all to the evidence in this claim, because SEIU, despite its misgivings about whether it would prevail in any arbitration of the termination grievance, elected to pursue arbitration, and did in fact seek and receive a list of arbitrators. Thus, the Goldman declaration fails to create any material dispute of fact sufficient to defeat SEIU's motion.

With regard to the grievances that SEIU declined to pursue, it has provided reasons for doing so, and Holmes has no evidence to show that the Union's decisions were arbitrary or in bad faith.

**CONCLUSION**

In accordance with the foregoing, the court GRANTS the THC defendants' motion in

United States District Court

For the Northern District of California

1    part and DENIES it in part.  The motion is GRANTED as to the claims for unfair labor

2    practices; as to the Title VII and FEHA claims of discrimination and harassment based on

3    age; and as to the Title VII, FEHA, and § 1981 claims for discrimination based on race. The

4    motion is DENIED as to the Title VII and FEHA claims for race-based harassment; and as

5    to the claims for retaliation under Title VII, § 1981, and FEHA.  The court GRANTS the

6    Union's motion.

7          The THC defendants also assert that to the extent that the court does not grant

8    summary judgment as to all plaintiffs' claims, the court should grant summary judgment as

9    to the prayer for reinstatement, in view of Holmes' post-termination history or hostility and

10   personal animus toward THC and Shaw.

11         Citing Rabkin v. Oregon Sciences Health University, 350 F.3d 967, 977-78 (9th Cir.

12   2003), and Cassino v. Reichhold Chemical, 817 F.2d 1338, 1346 (9th Cir. 1987),

13   defendants argue that denial of reinstatement is an appropriate exercise of the district

14   court's equitable authority where there is a history of hostility between the parties.  Holmes

15   does not address this argument in his opposition, other that to say that the motion "is

16   without merit in view of overwhelming credible evidence in the record to the contrary to its

17   false contention of post termination hostility by Holmes."

18         This portion of the THC defendants' motion is DENIED, without prejudice to raising

19   the argument at trial.

20

21   **IT IS SO ORDERED.**

22   Dated:  February 22, 2011                        _____

23                                                    PHYLLIS J. HAMILTON
                                                      United States District Judge
24

25

26

27

28